UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. DAWN JOHNSON, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 08 C 50046 |
| MARY SIGLER, Warden, Dwight Correctional Center, | ) ) ) | The Honorable Philip G. Reinhard, |
| Respondent. | ) | Judge Presiding. |

---

## RESPONDENT'S MOTION TO DISMISS

Pursuant to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts,[1] this Court's March 31, 2008 order directing respondent to "answer or otherwise plead," and 28 U.S.C. § 2244(d)(1)(A), respondent MARY SIGLER moves this Court to dismiss, with prejudice, the instant petition for a writ of

---

[1] Under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, a response to the petition may be by "motion, or other response." Where a "dismissal may be called for on procedural grounds," a response by motion could "avoid burdening the respondent with the necessity of filing an answer on the substantive merits of a petition." Advisory Committee Notes to Rule 4, 1976 Adoption. This reasoning remains in force following the 2004 amendments to Rule 4. See Advisory Committee Notes to Rule 4, 2004 Amendments ("[t]he amended rule [4] reflects that the response to the habeas petition may be a motion"). See also Advisory Committee Notes to Rule 5, 2004 Amendments (Rule 4 permits the filing of pre-answer motions to dismiss, and "reflects the view that if the court does not dismiss the petition, it may require (or permit) the respondent to file a motion.").

habeas corpus as untimely under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  In support, respondent states as follows:

1.      Petitioner, Dawn Johnson, is incarcerated at the Dwight Correctional Center in Dwight, Illinois, where she is in the custody of respondent, Mary Sigler. Petitioner's prison identification number is R36751.

2.      Petitioner, along with codefendants John White, Jr. and Stacey Bennick, was charged in connection with the drive-by shooting death of Paula Proper.  Rule 23 Order, *People v. Johnson*, No. 2-01-1455 (Ill.App. 2003) (Exhibit A). Following a 2001 jury trial in the Circuit Court of Winnebago County, Illinois, petitioner was convicted of first degree murder, and was sentenced by the trial court to 50 years' imprisonment.  Exh. A at 1.

3.      Petitioner appealed her judgment of conviction to the Illinois Appellate Court, Second District, which affirmed on May 15, 2003.  Exh. A at 24.  Petitioner filed a petition for leave to appeal (PLA) in the Illinois Supreme Court that the court denied on January 28, 2004.  Order, *People v. Johnson*, No. 97383 (Ill. 2004) (Exhibit B).  Petitioner had 90 days within which to file a petition for writ of certiorari in the United States Supreme Court (*see* S. Ct. Rule 13), but she did not do so.

2

4.     On July 19, 2004, petitioner filed[2] in the Circuit Court of Winnebago County a pro se petition for postconviction relief, pursuant to the Illinois Post-Conviction Hearing Act (codified at 725 ILCS 5/122-1, *et seq.*).  Postconviction petition, *People v. Johnson*, No. 99 CF 2951, Circuit Court of Winnebago County (Exhibit C).  The state circuit court summarily dismissed the petition as frivolous and patently without merit.  Order dismissing postconviction petition, *People v. Johnson*, No. 99 CF 2951 (Exhibit D).

5.     Petitioner appealed the judgment dismissing her postconviction petition to the Illinois Appellate Court, Second District, claiming that the petition stated the gist of a constitutional claim of her actual innocence.  Rule 23 Order at 3, *People v. Johnson*, No. 2-04-1009 (Ill.App. 2006) (Exhibit E).  On October 25, 2006, the Illinois Appellate Court affirmed the dismissal of petitioner's postconviction petition, holding that the affidavit from her codefendant, John White, which averred that petitioner had not committed the murder, did not contain newly discovered evidence, and that petitioner's evidence did not present a free-standing claim of actual innocence cognizable under Illinois law.  Exh. E. at 4-5.  Petitioner filed a PLA in the Illinois Supreme Court that the court denied on January 24, 2007.  Order, *People v. Johnson*, No. 103764 (Ill. 2007) (Exhibit F).

---

[2] For purposes of ascertaining the dates on which petitioner filed documents in state court, respondent assumes that the documents are filed on the date that petitioner signed and dated the documents in question, rather than the file-stamp date provided by the clerk's office.  *See, e.g., Jones v. Bertrand*, 171 F.3d 499, 502 (7th Cir. 1999) (mailbox rule extended to pro se habeas petitions).  This gives petitioner the benefit of the earliest possible filing date.

6.    On March 15, 2007, petitioner filed a petition for writ of certiorari in the United States Supreme Court.  Docket Entry, *People v. Johnson*, No. 06-10065 (U.S. 2007).  (Exhibit G).  The United States Supreme Court denied that petition on April 16, 2007.  Order, *People v. Johnson*, No. 06-10065 (U.S. 2007) (Exhibit H).

7.    On March 20, 2008, petitioner filed[3] a petition for writ of habeas corpus in this Court under 28 U.S.C. § 2254(d) raising the following claims:

    a.    the trial court erred in compelling petitioner to choose whether to delay trial or to proceed without an alibi defense in light of trial counsel's discovery violation;

    b.    the trial court and prosecutor prejudiced the jury in its questioning during voir dire;

    c.    the trial court failed to instruct the jury on an alibi defense;

    d.    trial counsel was ineffective for failing to timely disclose petitioner's alibi defense, failing to object to the trial court's decision to bar the alibi defense without a continuance, failing to object to the prosecutor's improper voir dire examination and to the improper jury instructions, and failing to object to an in camera or ex parte communication without petitioner's presence or knowledge; and

---

[3]    The date of filing in this case is the date on which the clerk received the petition.  In some circumstances, pursuant to Rule 3(d) of the Rules Governing Section 2254 Cases in the United States District Courts, the date on which an inmate mails a legal document may constitute the date of filing.  However, to take advantage of this provision, a petitioner must comply with the procedural requirements of the Rule, and this petitioner did not.  She failed to indicate the date on which the petition was mailed, and did not include a notarized statement or a declaration under penalty of perjury that adequate postage was prepaid.  Therefore, Rule 3(d) does not apply.  *Cf. United States v. Craig*, 368 F.3d 738, 740-41 (7th Cir. 2004) (observing that § 2255 petitioner is entitled to benefit of mailbox rule with respect to notice of appeal only if petitioner complies with text of FED. R. APP. P. 4(c)(1)).  However, even giving petitioner the benefit of the earliest possible filing date — the date of mailing — the instant petition remains untimely.

e.    petitioner is actually innocent of the crime of first degree murder because she did not commit the shooting.

8.    Petitioner has exhausted her state court remedies because no state court avenues remain available by which petitioner may present the constitutional claims that she has raised in the present federal habeas petition.

9.    The following materials, pertinent to this Court's timeliness determination, are being filed as exhibits with this Court:

Exhibit A:    Rule 23 Order, *People v. Johnson*, No. 2-01-1455 (Ill.App. 2003);

Exhibit B:    Order, *People v. Johnson*, No. 97383 (Ill. 2004);

Exhibit C:    Postconviction petition, *People v. Johnson*, No. 99 CF 2951, Circuit Court of Winnebago County;

Exhibit D:    Order dismissing postconviction petition, *People v. Johnson*, No. 99 CF 2951;

Exhibit E:    Rule 23 Order, *People v. Johnson*, No. 2-04-1009 (Ill.App. 2006);

Exhibit F:    Order, *People v. Johnson*, No. 103764 (Ill. 2007);

Exhibit G:    Docket Entry, *People v. Johnson*, No. 06-10065 (U.S. 2007); and

Exhibit H:    Order, *People v. Johnson*, No. 06-10065 (U.S. 2007).

10.    The instant petition for writ of habeas corpus should be dismissed with prejudice because it is untimely under 28 U.S.C. § 2244(d)(1), which imposes a one-year statute of limitations on the filing of § 2254 habeas corpus petitions. Section 2244(d) provides as follows:

> (1)  A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—

   (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

   (B)  the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

   (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C § 2244(d).

    11.    Petitioner does not allege a State impediment to filing, a newly recognized and retroactive constitutional right, or a subsequent discovery of the factual predicate of a claim.  *See* 28 U.S.C. § 2244(d)(1)(B)-(D).  Therefore, of the four possible dates from § 2244(d)(1) for starting the limitations period, the date on which petitioner's conviction became final is the only one applicable to the present case.  *See* 28 U.S.C. § 2244(d)(1)(A).

6

12.    Petitioner's conviction became final under § 2244(d)(1) on April 28, 2004 — 90 days after the Illinois Supreme Court denied her PLA on direct review — when the time to file a petition for a writ of certiorari in the United States Supreme Court expired. *Anderson v. Litscher*, 281 F.3d 672, 674 (7th Cir. 2002). Therefore, petitioner's federal habeas petition was due in this Court on or before April 28, 2005.

13.    Under § 2244(d)(2), the § 2244(d)(1) limitations period is tolled during the pendency of a "properly filed" application for postconviction relief. *Pace v. DiGuglielmo*, 544 U.S. 408, 410 (2005). Petitioner properly filed a state postconviction petition on July 19, 2004, and that filing tolled the limitations period under § 2244(d)(2). *Graham v. Borgen*, 483 F.3d 475, 477 (7th Cir. 2007). However, 82 days of untolled time elapsed between the conclusion of direct review on April 28, 2004, and the filing of petitioner's postconviction petition on July 19, 2004.

14.    After the state supreme court denied petitioner's postconviction PLA on January 24, 2007, she filed a petition for a writ of certiorari in the United States Supreme Court. However, this filing did not toll the limitations period under § 2244(d)(2), and the statute of limitations period began running again following the state supreme court's denial of her postconviction PLA. *Lawrence v. Florida*, 127 S.Ct. 1079, 1081, 1083-84 (2007) (petition for a writ of certiorari on postconviction review does not toll limitations period under § 2244(d)(2)); *Smith v. Hulick*, 2007 WL 2025771, *4 (N.D. Ill. 2006) (petition for a writ of certiorari to the United States Supreme Court following state supreme court's denial of postconviction PLA does

7

not toll the statute of limitations).  The statute of limitations period continued running until petitioner filed the instant habeas petition in this Court on March 20, 2008.  Petitioner allowed 421 days of untolled time to elapse between January 24, 2007 and March 20, 2008.

15.    In sum, petitioner's federal habeas petition was filed 503 days after her judgment of conviction became final under § 2244(d)(1)(A).  This tally includes: (1) the 82 days that elapsed between the conclusion of petitioner's direct appeal and the start of her postconviction proceedings; and (2) the 421 days that elapsed between the conclusion of those postconviction proceedings and the filing of the instant habeas petition.  The present petition is therefore late under § 2244(d)(1).  Because petitioner filed her habeas petition more than one year after AEDPA's limitations period began to run under § 2244(d)(1)(A), the petition is untimely, and this Court should dismiss it with prejudice.

16.    Petitioner has not argued that equitable tolling should excuse her untimely filing.  *See, e.g.*, *DiGuglielmo,* 544 U.S. at 418 (equitable tolling generally permissible only if petitioner demonstrates that he has been pursuing his rights diligently and some "extraordinary circumstance" prevented timely filing); *Arrieta v. Battaglia*, 461 F.3d 861, 867 (7th Cir. 2006).  Nothing on this record indicates that any extraordinary circumstance prevented petitioner from complying with AEDPA's limitations period.  Petitioner is thus not entitled to equitable tolling.

17.    Nor does petitioner's claim of actual innocence excuse the untimeliness of her petition.  Actual innocence is not itself a claim that is cognizable on federal habeas review.  *See Herrera v. Collins*, 506 U.S. 390, 404 (1993) ("'[A]ctual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.").  While a showing of actual innocence may allow a federal habeas court to address the merits of a procedurally defaulted claim, *see Schlup v. Delo*, 513 U.S. 298, 321 (1995); *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003), it "does not extend the time to seek collateral relief." *Escamilla v. Jungwirth*, 426 F.3d 868, 871 (7th Cir. 2005).

18.    "'[A]ctual innocence' is unrelated to the statutory timeliness rules." *Escamilla*, 426 F.3d at 871 (citing *Gildon v. Bowen*, 384 F.3d 883 (7th Cir. 2004)).  A newly discovered claim coupled with a showing of actual innocence would permit a petitioner to file a successive petition to present the newly discovered claim, *see id.* at 872 ("The first showing [that the factual predicate of the claim could not have been discovered earlier] resets the clock under § 2254(d)(1)(D), and the second [the showing of actual innocence] clears the remaining procedural hurdle under § 2244(b)(2)(B)" but "[a]ctual innocence without a newly discovered claim does nothing at all").  *See also Araujo v. Chandler*, 435 F.3d 678, 681 (7th Cir. 2005). Here, although petitioner alleges actual innocence, she does not present any newly discovered claim (other than, according to her, the claim of actual innocence, which is not itself a cognizable claim) that would allow her to "reset" the clock under

9

§ 2244(d)(1)(D). *Escamilla*, 426 F.3d at 871. Furthermore, petitioner's actual innocence claim, which is based on the 2003 affidavit from codefendant John White and was attached to her state postconviction petition, is not based on "newly discovered" evidence. According to the state appellate court, petitioner's submission of that affidavit after her 2001 trial did not render that evidence newly discovered; this evidence could have been discovered before trial with the exercise of due diligence. *See* Exh. E at 4-5. Thus, the timeliness of petitioner's federal habeas petition — including her actual innocence claim — is governed by § 2244(d)(1)(A), rather than § 2244(d)(1)(D). Accordingly, the petitioner is time-barred and should be dismissed.

## <u>CONCLUSION</u>

This Court should dismiss, with prejudice, the instant petition for a writ of habeas corpus as time-barred under 28 U.S.C. § 2244(d)(1).  If the Court determines that petitioner's habeas petition is not time-barred, respondent respectfully requests 30 days from the entry of the Court's order denying this motion to address the merits and/or any procedural defaults of petitioner's claims in a subsequent submission.

May 1, 2008                                              Respectfully submitted,

                                                        LISA MADIGAN
                                                        Attorney General of Illinois

                                        By:      /s/ Sheri L. Wong
                                                SHERI L. WONG, BAR NO. 6291090
                                                Assistant Attorney General
                                                100 W. Randolph Street, 12th Floor
                                                Chicago, IL 60601-3218
                                                TELEPHONE: (312) 814-3692
                                                FAX: (312) 814-2253
                                                EMAIL: swong@atg.state.il.us

11

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2008, I electronically filed respondent's

**Motion to Dismiss** with the Clerk of the United States District Court for the

Northern District of Illinois, Western Division, using the CM/ECF system, and that

on the same date, I mailed by United States Postal Service the same to the

following non-registered party:

Dawn Johnson, R36751
Dwight Correctional Center
23813 E. 3200 North Road
Dwight, IL 60420


LISA MADIGAN
Attorney General of Illinois

By:     /s/ Sheri L. Wong
        SHERI L. WONG, BAR NO. 6291090
        Assistant Attorney General
        100 W. Randolph Street, 12th Floor
        Chicago, IL 60601-3218
        TELEPHONE: (312) 814-3692
        FAX: (312) 814-2253
        EMAIL: swong@atg.state.il.us

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| DAWN JOHNSON | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 08 C 50046 |
| | ) | |
| MARY SIGLER, Warden, | ) | |
| Dwight Correctional Center, | ) | The Honorable |
| | ) | Philip G. Reinhard, |
| Respondent. | ) | Judge Presiding. |

_____

## <u>TO THE CLERK OF THE UNITED STATES DISTRICT COURT</u>

The following Exhibits A through H to respondent's Motion to Dismiss, which

was filed on May 1, 2008 in the above-captioned cause, are hereby electronically

filed with this Court:

Exhibit A:    Rule 23 Order, *People v. Johnson*, No. 2-01-1455 (Ill.App. 2003);

Exhibit B:    Order, *People v. Johnson*, No. 97383 (Ill. 2004);

Exhibit C:    Postconviction petition, *People v. Johnson*, No. 99 CF 2951,
Circuit Court of Winnebago County;

Exhibit D:    Order dismissing postconviction petition, *People v. Johnson*, No.
99 CF 2951;

Exhibit E:    Rule 23 Order, *People v. Johnson*, No. 2-04-1009 (Ill.App. 2006);

Exhibit F:    Order, *People v. Johnson*, No. 103764 (Ill. 2007);

Exhibit G:    Docket Entry, *People v. Johnson*, No. 06-10065 (U.S. 2007); and

Exhibit H:    Order, *People v. Johnson*, No. 06-10065 (U.S. 2007).

May 1, 2008                       Respectfully submitted,

                                  LISA MADIGAN
                                  Attorney General of Illinois

                          By:     /s/ Sheri L. Wong
                                  SHERI L. WONG, Bar No. 6291090
                                  Assistant Attorney General
                                  100 West Randolph Street, 12th Floor
                                  Chicago, Illinois 60601-3218
                                  TELEPHONE: (312) 814-3692
                                  FAX: (312) 814-2253
                                  EMAIL: swong@atg.state.il.us

This Order Is Not Precedei
And Is Not To Be Cited

No. 2--01--1455

**FILED**

MAY **15** 2003

ROBERT J. MANGAN, CLERK
APPELLATE COURT 2nd DISTRICT

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | No. 99--CF--2951 |
| v. | ) ) | |
| DAWN M. JOHNSON, | ) ) | Honorable Michael R. Morrison, |
| Defendant-Appellant. | ) | Judge, Presiding. |

### RULE 23 ORDER

Following a jury trial, defendant, Dawn M. Johnson, was found guilty of first-degree murder (720 ILCS 5/9--1(a)(2)(West 2000)) and sentenced to 50 years' imprisonment.  On appeal, defendant challenges (1) the trial court's order of a mistrial; (2) the State's improper questions during _voir_ _dire_ examination; (3) the trial court's failure to instruct the jury on an alibi defense; and, (4) the admission of other various jury instructions.  For the following reasons, we affirm.

### FACTS

This case arose from the death of Paula Proper, who was killed in a drive-by shooting at 1136 S. Independence in Rockford on the night of October 30, 1999. Defendant and two co-defendants, Johnny White, Jr., and Stacey Bennick, were charged by indictment with the offense of first-degree murder in that each defendant without legal justification shot Paula Proper with a handgun, knowing such an act

EXHIBIT A

No. 2--01--1455

created a strong probability of death or great bodily harm to Paul
Proper or another, thereby causing her death in violation of
section 9--1(a)(2) of the Criminal Code of 1961 (Code) (720 ILCS
5/9--1(a)(2) (West 1998). On March 29, 2000, the court ordered
separate trials for each defendant.

Before jury selection began on defendant's trial, the
prosecutor questioned defense counsel as to whether he planned to
raise the affirmative defense of alibi. Defense counsel replied
that no alibi or affirmative defense would be raised and that he
planned to call no witnesses other than those disclosed by the
State. Thereafter, the case proceeded to jury selection.

It had become apparent to the State that defense counsel
wanted to present an alibi defense and, because defense counsel had
failed to timely notify the State that defendant had an alibi
defense, the State, outside the presence of the jury, filed a
motion in limine to bar any evidence of an alibi defense pursuant
to Supreme Court Rule 413 (134 Ill. 2d R. 413). This occurred on
May 30, 2001, which was the second day of jury selection. Defense
counsel opposed the motion and asserted that the evidence would
show that defendant was in a certain pool hall "where she has said
she was in her statement and where it's been indicated, but was not
in the car at the time of the shooting." The State responded that
counsel's statement amounted to an alibi defense, which should be
barred.

After moving into chambers with the attorneys, the trial court
explained that, while defendant was entitled to present an alibi
defense, the State was entitled to proper notice. The trial court

-2-

No. 2--01--1455

noted that, if it barred the defense from presenting any alibi evidence, there was a risk of an appellate reversal on ineffective assistance grounds. Because of this, the trial court believed it was necessary to start the trial process over. At this point in the proceedings, only four prospective jurors had been questioned by the court. The trial court expressed its view that it would like to start with a new jury panel because of the possible continuance. Defense counsel agreed with the trial court's decision because the circumstances were created through his own "screw-up."

Following additional discussion about the State's need to obtain additional witnesses to rebut defendant's alibi defense, the trial court stated that defendant should know her options. Addressing defendant, the trial court explained that, in light of the circumstances, defendant had the option of proceeding to trial immediately without the alibi defense or to continue to allow defendant to raise an alibi defense and give the State time to respond. Defense counsel later responded that defendant wanted to continue the case and agreed that "[t]he time would continue to be tolled."

The trial court subsequently discharged the prospective jurors and ordered a continuance, but reserved the right to continue the trial further depending on the State's efforts in obtaining additional witnesses. The court also stated that any time delay would be charged to defendant. Four days later, the State reported that it was set for trial. As a result of the disclosure of an additional defense witness, jury selection began the next day.

-3-

No. 2--01--1455

The jury trial began on June 13, 2001. Rockford police detective John Eau Claire testified that on October 30, 1999, he was sent to a single-story residence at 1136 S. Independence shortly after 11 p.m. He saw a man, later identified as Harold Proper, who was also known as Merski, standing outside the residence yelling that his sister had been shot. Eau Claire entered the house and saw a woman seated on a couch who appeared to have a gunshot wound above her right eye. She was bleeding heavily and showed no signs of life. Eau Claire later learned the woman was Paula.

Raven Proper, who was 14 years of age, testified that Paula was her aunt. On October 30, she and her cousin Tasha Proper were at the house. Tasha went into the kitchen to light a cigarette and Raven followed her to get a drink of water. Raven recalled that, before lighting her cigarette, Tasha looked out of the window and yelled, "Duck!" Raven looked out of the kitchen window and saw defendant, whom she had met once before, "hanging out the van." She saw two other people in the van. She saw defendant shoot the gun and then she "got down on the floor and crawled to the basement." She heard bullets flying everywhere. She heard more than 20 shots fired. After the gunshots stopped, Raven went upstairs into the living room and found her aunt with a bullet in her forehead.

Raven did not tell the police that she saw defendant shooting because they did not ask her and she was tired. Raven recalled that defendant was wearing a black sweatshirt with a hood.

-4-

No. 2--01--1455

Rockford police detective Michael Spelman processed the crime scene. He found 21, 9-millimeter shell casings outside the house. He also found a number of spent bullets in the house. Jeff Parise, a State police forensic firearm's examiner, examined the gun and magazine he received as evidence. He identified the gun as a semiautomatic pistol. He test-fired the gun and determined that the casings that were retrieved from the scene were fired from the pistol.

Lewis Lara, Paula's nephew, testified that he knew the co-defendants, White and Bennick. Bennick was Lara's former girlfriend. Lara did not know defendant. On October 30, Lara went to Paula's house at about 2 p.m. As he walked up to the house, he saw Bennick and a white woman in a van. Bennick was driving and she was "hollering," as the van drove away. Lara went inside and told his cousin Merski about the incident. Merski grabbed Lara's car keys and left. Merski returned and said he had "whooped" Bennick's "ass" and "smacked" the other girl too. Bennick and White called Paula's house about three hours later. White told Lara, "You know I got a 9 for your bitch ass." Lara understood this to mean that White was going to shoot him. Lara testified that he was not in a gang, but that White was a member of the Satan Disciples' gang.

Rockford police detective Steven Pirages testified that on October 31 he went to the Dallas West Pool Hall. He met with Brian Spears, who lived in and worked at the pool hall and who was later identified at trial as a member of the Satan Disciples' street gang. Spears took Pirages to the basement where he found a gun and

-5-

No. 2--01--1455

a magazine. Pirages and Sergeant Gregory Lindmark then went to
defendant's house around 8 a.m. The detectives asked defendant to
go with them to police station and she agreed. Lindmark testified
that, on the way to the station, defendant cried and said, "It was
an accident."

Defendant's friend, Jason Taylor, testified that he also had
been a friend of defendant's husband and of her recently deceased
brother. Defendant's husband and brother had been members of the
Satan Disciples' gang. White and Taylor also were gang members.
However, the gang fell apart when defendant's brother died. Taylor
knew Bennick was White's current girlfriend. On October 30, White
called Taylor and told him that Bennick and defendant "had got into
it with Merski Proper." White wanted Taylor to come to defendant's
house, "in case they drove by or came by and wanted to fight us."
At that time, Taylor would die for another member of his gang, but
not now. Defendant was not a member of the gang.

Taylor testified that he, White, Bennick, and some other
people gathered at defendant's house that afternoon. Defendant
told Taylor that Merski had hit Bennick and that defendant had said
something to Merski and had thrown a pop bottle at him. Taylor,
White, and two other men left and drove by the home of a person
called "Thatcho" to see if Merski was there. The house was on
Independence. White was the driver. Taylor brought a 380 handgun
along "for safety." As they drove by the house, Thatcho took a
shot at them and they fled. Thatcho and Merski chased them in a
Cadillac. They returned to defendant's house. When they told

-6-

No. 2--01--1455

defendant what had happened, she took her children across the street.

After an hour had passed, Taylor and White left defendant's house and drove in White's van to the Dallas West Pool Hall to play pool. White subsequently paged Taylor, who then called White. White told Taylor that "Dawn wanted the Nation's Tec-9 back." Taylor explained that "Nation" meant the gang and "Tec-9" was the gun. Taylor testified that defendant's husband and brother, who had been the gang's leaders, had decided that defendant should be in charge of the gang's gun. Taylor took the gun from behind the counter at the pool hall. He and his girlfriend brought it and a 9-millimeter gun to defendant's house. Taylor identified the State's exhibit as the Tec-9 gun he brought to defendant's house. Taylor and his girlfriend then returned to the pool hall. Defendant, Bennick, and White stopped at a liquor store and they came to the pool hall. Taylor drank "not more than a 12-pack of beer," took some Valium, and smoked marijuana, but this did not affect his memory.

Taylor overheard defendant say, "You know I'll do it, John, you know I will do it." He heard Bennick say "She put it on her kids that she would do it," and "I will put it on my kids, I will do it." Taylor said these remarks meant that "they were going to do that, she would drive." He also heard White laugh it off, saying "I know you won't," and he bet them $40 that they "wouldn't do it." Defendant responded, "You know I will do it." She asked Taylor if he wanted to bet, but he declined. White took a gun from

-7-

No. 2--01--1455

behind the counter and gave it to defendant, who put it in her
pocket.

Taylor further testified that Daniel Shearer, who was also in
the gang, was at the pool hall with his girlfriend, Brandi
Anderson. Bennick and defendant left the pool hall. About 20
minutes later, White and Shearer left to get a pizza. Defendant
and Bennick returned after an hour and talked to White, Shearer,
and Spears. Taylor testified as follows:

> "[Defendant] said that she shot them with the clip at
> Thatcho's house. She believed somebody was looking out the
> window but she wasn't sure, and she unloaded the clip, and
> Stacy said she drove. They said the house was taped off, the
> house was taped off."

Taylor described defendant as "kind of excited, but I mean like
adrenaline." She gave the gun to Spears. About 30 minutes later,
Bennick and defendant left. White told Taylor that, when he walked
them out, defendant said that she wanted to get paid, but that
White was not serious about paying her. White told defendant that
his van was "burned up" and he did not want to ride in it. Taylor
testified that this meant that somebody had probably seen them
shoot at the house out of his van. Taylor left the pool hall a
little while later with his girlfriend and White. They dropped
White off at defendant's house.

Rockford police detective Andre Brass testified that both he
and detective Kristen McLester questioned defendant on October 31
at about 8 a.m. Defendant was read _Miranda_ warnings at 8:28 a.m.
She told Brass that she did the shooting and Bennick drove the van.

-8-

No. 2--01--1455

Brass and McLester left the room to tell Pirages what they had
learned. After they reentered the room about 20 minutes later,
defendant admitted that the gun she used, a Tec-9, was hers. The
detectives left the room again. When they reentered the room 20
minutes later, defendant told them that White had told her that
someone was hit but there was nothing in the newspaper. She then
told them that she drove by the location, but did not see an
ambulance so she thought no one had been hurt. When the detectives
told defendant that Paula died of her injuries, defendant started
to cry.

Throughout the morning, defendant told Brass that she was the
shooter, Bennick was the driver, and White was not in the van.
Defendant seemed calm and showed no signs of fatigue, drugs, or
alcohol use. Thereafter, defendant gave the police a statement,
which was read to the jury over objection.

Tammy Gonzalez testified for the defense. Paula was her
cousin. On October 30, 1999, she talked to White, who told her not
to go to Tasha's house because something was going to happen.

Tasha testified that she and her boyfriend Thatcho lived with
her two children at her aunt's home at 1136 S. Independence. On
October 30, Bennick called her and said to get the children out of
the house because "they" were going to burn the house or shoot it
up. Tasha recalled being in the house that night. She went into
the kitchen to light a cigarette. As she looked out of the window,
she saw a van turn the corner, turn its light off, and she saw the
passenger stick his head out of the window with a gun. She told
the police the passenger was White. She assumed it was White

-9-

No. 2--01--1455

because of the earlier warnings, but she could not see the person's face.

Defendant testified that in October 1999, she and White were friends. She did not know Merski. Defendant recalled driving to a store with Bennick on October 30. Bennick drove down a street and yelled out of the car window at some people. Bennick's daughter later said that Merski was behind them. Bennick stopped the car. Merski came up to the car, hit Bennick, and tried to pull her out of the car. Defendant threw her drink at him and put her foot on the gas pedal. As they drove away, Merski followed. At a light, Merski and Bennick got out of their cars and argued. Defendant and Bennick finally left the area and defendant returned home. White was there and defendant told him what Merski had done to Bennick. Defendant took her children across the street to her cousin's house. In the meantime, White called gang members to defendant's home to fight Merski because he had hit Bennick. At some point, defendant and Bennick went to the liquor store. Defendant recalled drinking a lot that day. Then everyone went to the pool hall.

Defendant spent most of the time in Spears' apartment, which was attached to the pool hall. She drank vodka and tequila throughout the night. Defendant left the pool hall twice for food and liquor. White and Bennick took her home in White's van. She denied telling White that she would "do it" and denied that she made a bet with him.

Defendant was not home long before she met with White and Bennick. White told defendant that he needed her to rent a motel

-10-

No. 2--01--1455

room.  While at the motel room, White told defendant that he was
going to jail for a long time because of the gun.  She had to go
home to get her children.  When she arrived there, police were
everywhere.  They searched her house and took White and Bennick
away.

   After the police left, defendant testified that she drank some
more.  She also smoked marijuana, took NoDoze, Xanex, Ritalin,
morphine, and did not sleep.  At about 4:30 a.m., the police picked
up White's van.  The police arrived at her house again at around 8
a.m., and she agreed to go to the station with them.  She testified
that she confessed to the shooting so that White would not have to
return to prison.  She thought the charge was "a gun case" or a
shooting.  When she learned someone had been killed, she believed
it was too late to change her story, so she signed the statement.
She did not know Thatcho Gonzalez or the people who lived at 1136
S. Independence.

   In rebuttal, Brandi Anderson testified that she knew
defendant.  Anderson saw defendant with White and Bennick at the
pool hall on October 30.  Defendant and Bennick left the pool hall
together a few times.  Anderson talked to defendant, who told her
that she and Bennick took White's van and the house "got shot at."
Defendant also told Anderson that she would not have done it if she
had been sober.

   Rockford police officers denied that they told defendant what
to say in her statement.  Detective McLester never asked defendant
if she had consumed drugs or alcohol because she never detected any
signs that she was under the influence of alcohol or drugs.  Her

-11-

No. 2--01--1455

eyes were not red, bloodshot, or glassy. Her speech was not slurred. There was no odor of alcohol and she appeared alert and acted rationally. Detective Lindmark did not observe any outward signs of alcohol or drug usage on defendant. He recalled that when he first asked defendant to come to the police station, he told her that it was regarding a shooting investigation of Paula Proper. He did not tell defendant that Paula had died.

The jury found defendant guilty of first-degree murder and the trial court sentenced defendant to 50 years' imprisonment. After a motion to reconsider sentence was denied, defendant filed this timely appeal.

## ANALYSIS

On appeal, defendant contends that she was denied a fair trial because (1) the trial court ordered a mistrial and continued the case after defense counsel failed to disclose the alibi defense; (2) the State improperly indoctrinated prospective jurors during voir dire; (3) the trial court failed to sua sponte instruct the jury regarding her alibi defense; (4) the trial court improperly instructed the jury that the State did not have the burden of proving the offense occurred on the date charged; and, (5) the trial court improperly instructed the jury on accountability.

As a threshold matter, the State contends defendant has waived every issue for failing, among other things, to object at trial, to tender the proper instruction, or to raise in her posttrial motion any of the issues she now asserts as error on appeal. Defendant concedes waiver, albeit in her last issue on appeal, but argues that the issues should be addressed on plain error grounds or on

-12-

No. 2--01--1455

the grounds that her trial counsel committed multiple errors, the cumulative effect of which denied her the effective assistance of counsel.    Because defendant asserts that the issues raised on appeal are the result of plain error or ineffective assistance of trial counsel, we choose to relax the waiver rule and address the merits of defendant's appeal.  See People v. Segoviano, 189 Ill. 2d 228, 244 (2000); People v. Friesland, 109 Ill. 2d 369, 374-75 (1985).  We therefore will frame defendant's issues in terms of ineffective assistance of counsel or plain error claims.

Whether the representation by her attorney denied defendant the effective assistance of counsel is to be determined under the standard set forth in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1996).    To prevail on a claim of ineffective assistance of counsel, a defendant must show both that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant such that he was deprived of a fair trial.  People v. Nunez, 325 Ill. App. 3d 35, 42 (2001), citing Strickland,  466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.  The failure to satisfy either prong of the Strickland test precludes a finding of ineffective assistance of counsel.  Nunez, 325 Ill. App. 3d at 42.

I. Discovery Violation

Defendant first contends that she was denied her rights to a fair trial when the trial court ordered a mistrial as a consequence of defense counsel's failure to notify the State of his intention to raise an alibi defense at trial.  We disagree.

-13-

No. 2--01--1455

Supreme Court Rule 413(d)(iii) requires the defendant to
disclose "specific information as to the place where he maintains
he was at the time of the alleged offense." 134 Ill. 2d R. 413
(d)(iii). Supreme Court Rule 415(g) authorizes sanctions for
violation of the discovery rules by a party. A trial court may
order disclosure of the material, grant a continuance, exclude the
evidence, or enter such an order as seems just under the
circumstances. 134 Ill. 2d R. 415 (g). The appropriate sanction
to be applied is left to the trial court's discretion, and the
judgment of the trial judge is given great weight. <u>People v.
Morgan</u>, 112 Ill. 2d 111, 135 (1986).

Here, defense counsel failed to provide the State with proper
notice regarding the alibi defense. Defense counsel admitted, on
the second day of jury selection, that he intended to raise an
alibi defense at trial. The trial judge was aware that defendant
was entitled to present an alibi defense and that the State was
also entitled to proper notice. The trial judge also knew that, if
he barred defendant from presenting any alibi evidence, there was
a risk of an appellate reversal on ineffective assistance grounds.
At that point in the proceedings, only four prospective jurors had
been initially questioned by the court. A continuance to allow the
State time to prepare rebuttal witnesses might have presented a
potential problem as far as extending the prospective jurors' terms
of service. In light of these facts, by offering defendant a
choice between proceeding to trial immediately without the benefit
of an alibi defense or granting a continuance to allow the State to
obtain rebuttal witnesses as a direct consequence of defense

-14-

No. 2--01--1455

counsel's admitted failure to comply with the discovery rules, the trial court did not abuse its discretion by fashioning a remedy that protected defendant's rights to a fair trial.

Defendant argues that her speedy trial rights were violated. However, defendant offers no accounting as to how a four-day delay violated her speedy trial rights. The relief defendant requests on appeal, a new trial, is precisely what she received when the trial court excused defense counsel's failure to disclose the alibi defense.    We perceive no prejudice.    Without a finding of prejudice, defendant has no ineffective-assistance claim.

II. <u>Voir Dire</u> Examination

Defendant next contends that counsel was ineffective for failing to object to improper questioning by the prosecutor during <u>voir dire</u>.  The record shows that the prosecutor offered to 10 of the 12 jurors the following two substantively similar questions during <u>voir dire</u>:

> "Q.   If in reviewing [the jury] instructions you find that the law doesn't require [the State] to prove that the Defendant intended to kill the victim that was ultimately killed in this case, can you follow the law?
>
> A.   Yes.
>
> A.   If you find that the law doesn't require [the State] to show this crime was premeditated that there was [a] prior plan in place to commit this shooting, can you follow the law?"

The sole legitimate purpose of the <u>voir dire</u> examination is to assure the selection of a fair and impartial jury.    <u>People v.</u>

-15-

No. 2--01--1455

_James_, 304 Ill. App. 3d 52, 58 (1999). <u>Voir</u> <u>dire</u> may not be used by either party to preeducate or indoctrinate prospective jurors to a particular theory or defense, or to impanel jurors with particular predispositions. <u>James</u>, 304 Ill. App. 3d at 58. The trial court has broad discretion in conducting and managing <u>voir</u> <u>dire</u>, and the decision to allow certain questions of prospective jurors is within this discretion. <u>People v. Dow</u>, 240 Ill. App. 3d 392, 396-97 (1992). An abuse of the court's discretion will be found only if, after reviewing the record, it is determined that the conduct of the court thwarted the selection of an impartial jury. <u>Kingston v. Turner</u>, 115 Ill. 2d 445, 465 (1987).

The State denies that it indoctrinated the jury and asserts that the record "clearly shows that [the prosecutor] sought only to determine whether the jurors could follow the law as instructed by the court." In support of its argument, the State relies on <u>People v. Taylor</u>, 287 Ill. App. 3d 254 (1997), which it cites as having been vacated on other grounds, for the proposition that it is acceptable for the State to inquire about whether the jurors could intellectually comprehend the respective theories of the case. However, contrary to the State's assertion, <u>Taylor</u> was vacated in its entirety by the supreme court (177 Ill. 2d 583 (1998)), and therefore, the legal premise relied on by the State is unsupported. We admonish the State for misleading defendant and this court.

Moreover, Supreme Court Rule 431 (177 Ill. 2d R. 431) provides in part that <u>voir</u> <u>dire</u> questions shall not directly or indirectly concern matters of law or instructions. In this case, the

No. 2--01--1455

prosecutor's line of questioning was clearly designed to instruct or preeducate the jurors regarding the law.

In <u>People v. Bell</u>, 152 Ill. App. 3d 1007 (1987), the defendant was charged with the murders of her parents and her confession was an integral element of the State's case. During <u>voir dire</u>, the prosecutor questioned potential jurors whether they believed that people have a natural impulse to confess their wrongdoings, and whether they believed a person could plan and carry out a murder of another person, even if that person was a family member, as a solution to problems within the relationship. Following her conviction, the defendant appealed and the appellate court held that the questions were improper because they served to indoctrinate the jurors as to the State's theory at trial and asked them to prejudge the facts of the case. <u>Bell</u>, 152 Ill. App. 3d at 1017.

Although the prosecutor's questions did preeducate the jury and were technically improper, we do not find that it amounted to prejudicial error. In this case, defendant, Bennick, and White were charged with the offense of first-degree murder in that each defendant without legal justification shot Paula Proper with a handgun, knowing such an act created a strong probability of death or great bodily harm. See 720 ILCS 5/9--1(a)(2) (West 1998). In Illinois, the intent to kill the victim is not a necessary element of first-degree murder; the State can prove either that the defendant had the intent to kill the victim or that the defendant had the intent to do great bodily harm to that individual or another, or knows that such acts will cause death to that

-17-

No. 2--01--1455

individual or another, or he knows that such acts create a strong
probability of death or great bodily harm to that individual or
another. See 720 ILCS 5/9--1(a)(2) (West 1998). Premeditation
also is not an element of first-degree murder. See 720 ILCS 5/9--
1(a)(2). Thus, the prosecutor's statements that the law does not
require proof of premeditation or intent to kill the victim that
was ultimately killed were true. Therefore, unlike in Bell, the
prosecutor's questions did not affect the impartiality of the jury
in any way by improperly indoctrinating the jury to either party's
position. Nor were the questions used as a means of impaneling a
jury with a particular predisposition. Because we find no
prejudice, defendant fails to satisfy the second prong of the
Strickland test, and we reject her claim of ineffective assistance
based on counsel's performance during voir dire.

    III. Jury Instructions

    Defendant next raises several arguments concerning jury
instructions. Defendant first asserts that an instruction
regarding her alibi defense should have been tendered to the jury.
We note that defense counsel failed to tender an alibi instruction
at trial and therefore she frames this issue in terms of plain
error; that the trial court committed reversible error by failing
to sua sponte instruct the jury on an alibi defense. However,
whether it is framed in terms of plain error or ineffective
assistance, defendant's argument lacks merit. Illinois law is well
established that a jury should not be instructed on a defendant's
alibi theory. People v. Daniels, 272 Ill. App. 3d 325, 347 (1995).
See People v. Poe, 48 Ill. 2d 506, 511-12 (1971); People v.

-18-

No. 2--01--1455

<u>Brandon</u>, 197 Ill. App. 3d 866, 884 (1990); see also Illinois
Pattern Jury Instructions, Criminal, No. 24--25.05 (4th ed. 2000).

Defendant next asserts that defense counsel failed to object
when the trial court improperly allowed the jury to receive a "date
of offense charged" pattern jury instruction. See Illinois Pattern
Jury Instructions, Criminal, No. 3.01 (4th ed. 2000)(hereinafter
IPI Criminal 4th No. 3.01).  The jury received the following
instruction:

> "The indictment states that the offense charged was
> committed on or about the 30th day of October, 1999.  If you
> find the offense charged was committed, the State is not
> required to prove that it was committed on the particular date
> charged."

Defendant points out that the committee comments provide that this
instruction should be given only where there is a variance between
the date alleged and the evidence, and defendant asserts that the
evidence in this case consistently showed that the shooting
occurred on October 30, 1999.

Generally, the State is not required to prove that a crime was
committed on a particular date.  <u>People v. Whitaker</u>, 263 Ill. App.
3d 92, 98 (1994).  Additionally, the committee comments are not law
and the trial court is allowed to deviate from the suggested
instructions and format.  <u>Whitaker</u>, 263 Ill. App. 3d at 98.  The
giving of the date of the offense charged pattern jury instruction
may result in reversible error if the inconsistences between the
date charged in the indictment and the evidence presented at trial
are so great that the defendant is misled in presenting his

-19-

No. 2--01--1455

defense, or when the defendant presents an alibi for the time
alleged in the indictment and is thereby prejudiced because he
failed to gather evidence and witnesses for the time actually
proved by the State. People v. Suter, 292 Ill. App. 3d 358, 364
(1997). Defendant asserts that she was prejudiced because the
instruction unfairly interfered with her alibi defense. We
disagree.

While we agree that the instruction was unnecessary because
there was no variance between the date alleged and the evidence, we
find there is nothing in the record to suggest that defendant was
prejudiced by its admission. The mere fact that defendant raises
an alibi defense does not make time a material element of the
offense. See Suter, 292 Ill. App. 3d at 366. Here, defendant's
alibi defense focused on the offender's identification and her
absence from the scene of the crime, not on the timing of the
offense itself. Moreover, the bill of indictment did not allege
the specific time that the offense was committed and no bill of
particulars was filed. Therefore, the indictment did not mislead
defendant into gathering evidence and witnesses for a time other
than for the time actually proved by the State.

Defendant next asserts that defense counsel failed to object
when the trial court improperly gave an accountability instruction
to the jury. She argues that the jury was improperly instructed on
a theory of accountability because the evidence was limited to
defendant's culpability as the principal actor. She also contends
that the difference between the accountability instruction and the
definition and proposition instructions, which were also given to

-20-

No. 2--01--1455

the jury, were contradictory and must have misled and confused the jury. The following instructions were given to the jury.

The accountability instruction, patterned after IPI Criminal 4th No. 5.03, states:

"A person is legally responsible for the conduct of another person, when either before or during the commission of an offense, and with the intent to promote or facilitate the commission of that offense, he knowingly solicits, aids, abets, agrees to aid or attempt to aid the other person in the planning or commission of the offense.

The word conduct includes any criminal act done in furtherance of the planned and intended act."

The definition instruction, which was patterned after IPI Criminal 4th No. 7.01, provides:

"A person commits the offense of first degree murder when he kills an individual if, in performing the acts which cause the death, he knows the acts create a strong probability of death or great bodily harm to that individual or another."

The proposition instruction provides that, in order to sustain the charge of first-degree murder, the State must prove that defendant performed the acts which caused Paula Proper's death, and that, when defendant did so, she knew that her acts created a strong probability of death or great bodily harm to Paula Proper or another.

Defendant cites People v. Millsap, 189 Ill. 2d 155 (2000), and People v. Jamison, 207 Ill. App. 3d 565 (1991), for the proposition that instructing the jury on a new theory of accountability should

-21-

No. 2--01--1455

not be given when it was not an issue during the trial. In both those cases, however, the trial court abused its discretion by giving an accountability instruction in response to a jury inquiry on a new theory after the jury began its deliberations. Underlying both cases was the concern that the trial court might unintentionally create the appearance that it favored the prosecution's case. See Jamison, 207 Ill. App. 3d at 567. Further, by instructing the jury on a new theory once deliberations had begun, the trial court precluded the defendant from arguing against guilt as an accomplice as well as a principal. See Millsap, 189 Ill. 2d at 163-64. None of those concerns are present in this case and therefore, the cases relied on by defendant offer no support.

Moreover, contrary to defendant's assertions, that a defendant may be guilty as a principal does not preclude instructions on accountability; also, accountability instructions may be used even though the defendant is on trial alone. People v. Rhodes, 243 Ill. App. 3d 701, 706 (1993). The supreme court has held that the fact that the defendant might have been guilty of direct participation in the crime does not make an accountability instruction improper, as long as there was sufficient evidence that he aided another in the commission of the crime. People v. Stark, 33 Ill. 2d 616, 622 (1966). Evidence, however slight, on accountability along with evidence of actions as a principal offender is sufficient to support both instructions regardless of whether both theories were advanced in the State's case in chief. People v. Batchelor, 202 Ill. App. 3d 316, 331 (1990).

-22-

No. 2--01--1455

Here, even though the prosecutor did not emphasize the accountability theory of guilt, there was adequate evidence to support the trial court's use of the instruction. Raven Proper testified that defendant was the shooter. However, Tasha Proper testified that she thought White might have been the shooter. To accept defendant's argument that accountability would not apply, we would have to conclude that when one person is shooting from the van at someone and the other is driving the same van, neither is criminally responsible for the other's conduct. Such an argument is absurd. In this case, given the equivocal eyewitness testimony and the evidence that defendant shared a common criminal design or intent with Bennick and White before or during the shooting, we find no error in giving the accountability instruction. Because there was no error in giving the accountability instruction, defendant's claim of counsel's deficient performance also fails.

IV. Cumulative Effect of Errors

Finally, we note that, because we find that the contentions raised on appeal do not amount to prejudicial error, we must also reject defendant's last argument that the cumulative effect of the alleged errors deprived her of the right to a fair trial based on ineffective assistance of trial counsel. Even if we were to address this final contention, we do not find that defendant has shown that there is a reasonable probability that, but for defense counsel's failure to object to the prosecutor's questions during voir dire, to tender an alibi defense instruction, or to object to the date of the offense charged and accountability instructions, the result of the proceeding would have been different. Defendant

-23-

No. 2--01--1455

confessed that she was the shooter and her confession was corroborated by other evidence introduced at trial. We thus conclude that defendant was not denied the effective assistance of counsel.

## CONCLUSION

Accordingly, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

BYRNE, with GROMETER and GILLERAN JOHNSON, JJ., concurring.



807 N.E.2d 979 (Table)                                                                                     Page 1
207 Ill.2d 618, 807 N.E.2d 979 (Table), 283 Ill.Dec. 138
**(Cite as: 207 Ill.2d 618, 807 N.E.2d 979 (Table))**


People v. Johnson
Ill. 2004.
(The decision of the Court is referenced in the
North Eastern Reporter in a table captioned
"Supreme Court of Illinois Dispositions of Petitions
for Leave to Appeal".)
Supreme Court of Illinois
People
v.
**Dawn M. Johnson**
**NO. 97383**

JANUARY TERM, 2004
January 28, 2004

Lower Court: No. 2-01-1455

Disposition: Denied.

Ill. 2004.
People v. Johnson
207 Ill.2d 618, 807 N.E.2d 979 (Table), 283
Ill.Dec. 138

END OF DOCUMENT

EXHIBIT B

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IN THE CIRCUIT COURT

OF THE SEVENTEENTH JUDICIAL CIRCUIT OF ILLINOIS,

WINNEBAGO COUNTY, ILLINOIS

*FILED*
*Date: Mar. 1, 22, 04*
*Clerk of the Circuit Court*
*By*
*Winnebago County, IL Deputy*

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS ) | |
| Respondent, ) | |
| ) | |
| vs. ) | CASE NO.  99-CF-2951 |
| ) | |
| DAWN JOHNSON ) | |
| Petitioner. ) | |

## POST-CONVICTION PETITION

NOW COMES the petitioner, Dawn Johnson, pro se, and petitions this Honorable
Court to grant her relief under the Post Conviction Hearing Act pursuant to
725 ILCS 5/122-1 (West 2004).

In support of this petition, Petitioner states:

1. She was convicted of the offense of first degree murder after a jury trial
   before the Honorable Michael Morrison and sentenced to 50 years on
   September 25, 2001.

2. She did appeal her conviction to the Illinois Appellate Court Second
   Judicial District and that Court affirmed her conviction for first degree
   murder on May 15, 2003.  (Appellate No.  2-01-1455)

3. She did petition the Supreme Court of Illinois to take her Petition for
   Leave to Appeal and her petition was denied on January 28, 2004.
   (Supreme Court No.  97383)

4. This petition was mailed to the Clerk of the Circuit Court within the
   time frame enumerated under 725 ILCS 5/122-1.

5. Petitioner's constitutional rights were violated because:

EXHIBIT C

A14

## I.

PETITIONER AVERS THAT SHE WAS HEREBY DENIED HER GUARANTEED RIGHTS TO THE SIXTH
AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE 1 § 2, 8
OF THE ILLINOIS CONSTITUTION WHEREUPON PETITIONER'S RIGHTS TO EFFECTIVE ASSISTANCE
OF COUNSEL AND DUE PROCESS OF THE LAW WERE VIOLATED TO WIT:

Petitioner's trial counsel was fatally ineffective and negligent when he failed to
provide Petitioner with a reasonable level of representation that is guaranteed
her under the Sixth Amendment and as a result deprived Petitioner of her fundamental
right to a fair and unbiased trial for the forthcoming reasons:

1. Petitioner's counsel was ineffective for failure to disclose proper notice
   of an "alibi defense" pursuant to Supreme Court Rule 413, until <u>voir dire</u>
   selection had commenced and four prospective jurors were chosen; thus
   leading to the judge declaring a mistrial. (See Appendix A)

2. Trial counsel displayed further incompetence whereupon he ultimately failed
   to tender an "alibi defense" instruction in corroboration with Petitioner's
   theory of the case. Furthermore, he failed to maintain any consistent defense
   strategy, enter appropriate objections, preserve any said issues, and raise
   them in a post-trial motion. (See Appendix A)

3. Petitioner's counsel was deficient when he failed to object to the State's
   "accountability" instruction which was not even a theory presented during
   trial. Whereby there was overwhelming evidence discovered throughout the
   investigation and further adduced during trial that brought into light
   who the actual principal actor really was. (See Appendix A)

4. It should be further noted, that the presiding trial court judge conducted a
   "private conference" within his chambers, outside the presence of Petitioner;
   which is in direct violation of her Fourteenth Amendment right to be present
   at every stage of her trial. It was during said conference the judge had
   even stated this discovery violation could be considered a violation of
   Ms. Johnson's right to effective assistance of counsel. (See Appendix A)

A15

## II.

PETITIONER'S FIFTH AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION AND ARTICLE
1 § 10 OF THE ILLINOIS CONSTITUTION WHICH PROTECTS THE RIGHT TO DUE PROCESS OF
THE LAW WAS VIOLATED   TO WIT:

Petitioner's right to due process of the law was violated because she was directly
threatened and coerced by her co-defendant.

1. Petitioner's co-defendant, John White threatened Petitioner and told her
   she had better take responsibility for this case or suffer the same fate
   as the deceased. (See Appendix B)

A16

III.

PETITIONER CONTENDS HER RIGHTS TO AN IMPARTIAL JURY AND EQUAL PROTECTION UNDER THE
LAW OF THE UNITED STATES CONSTITUTION SIXTH AND FOURTEENTH AMENDMENTS AND ARTICLE
1 § 2, 8, 13, 17-20 OF THE ILLINOIS CONSTITUTION WERE VIOLATED   TO WIT:

Petitioner asserts that the prosecuting attorney was permitted to indoctrine prospective
jurors regarding his theory of the case, thereby gaining a favorable disposition
with the prospective jurors and creating an impartial jury in the proceeding manner:

1.  The prosecutor continuously questioned jurors regarding its burden of
    proof, through telling them it was not necessary for the State to prove
    motive, premeditation, nor criminal intent and further inquired if they
    could accept these concepts as a matter of law. (See Appendix C)

2.  During trial, the prosecutor never explored the theory of accountability,
    yet an accountability instruction was tendered for jury deliberations.
    Whereupon, prosecution continued to instill the jury with his own suggestive
    and irrelevant criminal theories. (See Appendix C)

3.  The Court permitted the prosecution's abuse of voir dire and subsequent
    unrelated jury instructions on theories irrelevant to trial. Thereby allowing
    the jury to draw unrelated and false conclusions concerning the case and
    Petitioner. (See Appendix C)

WHEREFORE, Dawn Johnson, Petitioner, pro se, prays the Court will review the terms of imprisonment and grant relief on the foregoing Post Conviction Petition. Petitioner further prays that the Court will enter an order thereby reducing her sentence to be served in the Illinois Department of Corrections.

Dawn Johnson, Petitioner, pro se states under penalty of perjury, that the facts set forth in this petition are true and correct to the best of her knowledge and belief.

/s/ _____
          Dawn Johnson, Petitioner, pro se

SUBSCRIBED AND SWORN to

before me this 19th day

of ___July___, 2004

_____
Notary Public

"OFFICIAL SEAL"
Kathryn J. Donovan
Notary Public, State of Illinois
My Commission Exp. 02/03/2007

A18

State of Illinois       } ss
County of Winnebago     )

JOHNNY WHITE JR.
   (AFFIANT)                         CASE NUMBER: 99CF2950

                                     JUDGE: M.MORRISON


                        AFFIDAVIT

    THE UNDERSIGNED BEING DULY SWORN UPON AN OATH DEPOSES AND
STATES THAT THE FOLLOWING STATEMENT GIVEN IS NOT THE RESULT OF
ANY THREAT TO MY PHYSICAL PRESENCE, NOR WAS I OFFERED ANY MONEY
IN THE FORM OF A BRIBE.

THAT ON THE 30 DAY OF Oct        1999 ,THE FOLLOWING INCIDENT OCCURED

I the Affiant Johnny White Jr. along with Stacy Bennick comitted
the act of murder while shooting up a house on Independence
Avenue where Paula Proper was shot and killed. I later told Dawn
Johnson who took no part in this crime that if she didn't confess
to comitting this act that she would end up like Paula Proper as
well as her family. Dawn Johnson had no involvement in this
crime!


SUBSCRIBED AND SWORN TO               I   DECLARE UNDER
BEFORE ME ON THIS 20th                PENALTY OF PERJURY
DAY OF November, 2003                 THAT THE FOREGOING IS
                                      TRUE AND CORRECT.

(NOTARY PUBLIC)
                                           (AFFIANT)

                                      JOHNNY WHITE JR.
                                           #K68531
                                      P.O. BOX 711
                                      MENARD IL  62295

"OFFICIAL SEAL"
Regina Summers
Notary Public, State of Illinois
My Commission Exp. 07/21/2005

A19

**STATE OF ILLINOIS**
**IN THE 17ᵀᴴ JUDICIAL CIRCUIT COURT**
**COUNTY OF WINNEBAGO**

FILED
Date: 9/3/04
~~~~~~~~~
Clerk of the Circuit Court
~~~~~~~~~

| | | |
|---|---|---|
| People of the State of Illinois | ) | |
| | ) | |
| Vs. | ) | Case No. <u>99 CF 2951</u> |
| | ) | |
| <u>Dawn Johnson</u> , | ) | |
| Defendant | ) | |

## ORDER DISMISSING POST CONVICTION PETITION AS "FRIVOLOUS AND/OR PATENTLY WITHOUT MERIT"

1) The Court, having considered the Post Conviction Petition filed by the above-named defendant, is acting within 90 days of the filing and docketing of said petition. Said petitioner is not under sentence of death in the above-named case.

2) The Court, acting pursuant to *725 ILCS 5/122-1* et. seq., (formerly Ch. 38, 122-2.1) finds that the petition is "frivolous and/or patently without merit".

3) The Court makes the following findings of fact and conclusions of law in support of said findings:

   a. The Defendant claims ineffective assistance of trial counsel. The Court finds that this issue was raised and resolved on direct appeal.

   b. The Defendant claims to have been threatened by a co-defendant. The Court finds that this issue could and should have been raised at trial and on direct appeal. The Court further finds that the statement of her convicted co-defendant offered in support of Defendant's claim is highly suspicious and uncorroborated. This claim is without merit and has been waived.

   c. The Defendant's claim that the prosecuting attorney was permitted to ask improper questions during <u>voir dire</u> examination was raised and resolved on direct appeal.

4) The Court hereby dismisses the Petition.

5) The clerk shall serve a copy of this order upon the petitioner by certified mailed within 10 days of its entry.

DATE: <u>9-3-04</u>     ENTERED: _____
                                   Steven G. Vecchio, Associate Judge

**EXHIBIT D**

A20

**FILED**

OCT 2 5 2006

ROBERT J. MANGAN, CLERK
~~APPELLATE COURT 2nd DISTRICT~~

No. 2--04--1009

*This Order Is Not Precedential And Is Not To Be Cited*

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | No. 99--CF--2951 |
| v. | ) ) | |
| DAWN M. JOHNSON, | ) ) | Honorable Steven G. Vecchio, |
| Defendant-Appellant. | ) | Judge, Presiding. |

**RULE 23 ORDER**

Defendant, Dawn M. Johnson, appeals the summary dismissal of her <u>pro se</u> postconviction

petition. Defendant contends that the petition was sufficient to state the gist of a constitutional claim

and should not have been dismissed at the first stage of the postconviction process. We disagree and

affirm.

This case arose from the drive-by shooting death of Paula Proper. The State charged

defendant and two co-defendants, John White and Stacey Bennick, with Proper's death. Defendants

were tried separately. At defendant's jury trial, defendant's alibi defense focused on the offender's

identification and her absence from the scene of the crime. Following a jury trial, defendant was

found guilty of first-degree murder (720 ILCS 5/9--1(a)(2)(West 2000)) and sentenced to 50 years'

imprisonment. Defendant appealed and we affirmed. See <u>People v. Johnson</u>, No. 2--01-1455 (2003)

(unpublished order under Supreme Court Rule 23).

EXHIBIT E

No. 2--04--1009

Defendant filed a pro se postconviction petition on July 22, 2004, which repeated several issues that had been decided on direct appeal. However, one argument was based on an affidavit which was executed by White on November 20, 2003. White averred that he and co-defendant Bennick had committed the murder; that defendant had nothing to do with the crime; and, that White had threatened defendant and her family to compel her to confess to the shooting. The circuit court summarily dismissed the petition, finding it to be frivolous and patently without merit. In support, the court found that the issue regarding defendant's claim of being coerced into confession by White could and should have been raised at trial and on direct appeal, and White's claim that defendant did not commit the murder was highly suspicious and uncorroborated.

The facts surrounding this case are fully discussed in People v. Johnson, No. 2--01--1455 (2003) (unpublished order under Supreme Court Rule 23), and will be repeated here as they relate to the issues raised in the instant postconviction appeal.

The Post-Conviction Hearing Act (Act) (725 ILCS 5/122--1 et seq. (West 2004)) provides an opportunity for a defendant to assert that his conviction was the result of a substantial deprivation of his constitutional rights. People v. Mahaffey, 194 Ill. 2d 154, 170 (2000). An action for postconviction relief is a collateral attack, not an appeal from an underlying judgment. People v. Morgan, 187 Ill.2d 500, 527-28 (1999). In order to be entitled to postconviction relief, the defendant must establish that there was a substantial deprivation of his constitutional rights in the proceedings that produced the judgment being challenged. Mahaffey, 194 Ill. 2d at 170.

In a noncapital case, the Act creates a three-stage procedure for postconviction relief. People v. Gaultney, 174 Ill. 2d 410, 418 (1996). The current petition was summarily dismissed after the first stage of review. During the first stage, the trial court reviews the petition within 90 days of filing and

No. 2--04--1009

determines whether it is frivolous or patently without merit. 725 ILCS 5/122--2.1(a)(2) (West 2004).

To survive summary dismissal, a pro se petitioner need only raise the "gist" of a meritorious

constitutional claim (Gaultney, 174 Ill. 2d at 418), but he must provide affidavits, records, or other

evidence to support his allegations or explain why none could be obtained (725 ILCS 5/122--2 (West

2004); People v. Collins, 202 Ill. 2d 59, 66 (2002)). The court may also consider the allegations in

light of the trial record and may dismiss the petition if they are contradicted by that record. People

v. Coleman, 183 Ill. 2d 366, 382 (1998). The State is not entitled to raise any arguments during the

summary review stage. Gaultney, 174 Ill. 2d at 418. Our review of a dismissal at the first stage of

postconviction proceedings is de novo. Coleman, 183 Ill. 2d at 388-89.

A claim of actual innocence based on newly discovered evidence may be raised in a

postconviction petition. See People v. Washington, 171 Ill. 2d 475, 489 (1996); see also People v.

Bull, 185 Ill. 2d 179, 212 (1998) ("An important goal of the criminal justice process is the protection

of the innocent accused against an erroneous conviction"). The supporting evidence must be new,

material, noncumulative, and most importantly, " 'of such conclusive character' " as would " 'probably

change the result on retrial.' " See People v. Silagy, 116 Ill. 2d 357, 368 (1987), quoting People v.

Molstad, 101 Ill. 2d 128, 134 (1984). In addition, in order to grant a new trial, the newly discovered

evidence must have been discovered since the trial and be of such character that it could not have

been discovered prior to trial by the exercise of due diligence. Molstad, 101 Ill. 2d at 134.

Defendant contends that the trial court erred in dismissing her postconviction petition because

it presented the gist of a constitutional claim of her actual innocence. In particular, defendant

contends the trial court erred in finding that the claim could and should have been raised at trial and

on direct appeal and erred in finding that White's statement was "highly suspicious and

uncorroborated." Defendant asserts that, contrary to the trial court's finding, the affidavit certainly involved new evidence because White did not submit the affidavit until November 2003, after defendant's trial was completed in June 2001, and the information could not have been adduced sooner, as it was available only when White decided to abandon the threats and make the statement. Defendant points out that White's confession to the offense is not only powerful evidence to justify defendant's confession but also materially affects her guilt or innocence to the crime.

We agree with defendant that the trial court cannot judge the credibility of the affidavit during the first stage of the petition (see, e.g., People v. Coleman, 183 Ill. 2d at 380-81). Although we find that the trial court erred in judging the credibility of the affidavit at the first stage of the petition, we find the trial court properly dismissed the petition without a hearing for the following reasons.

According to defendant, because the affidavit, in which White abandoned his threats against defendant and her family, was not submitted until November 2003, after defendant's trial was completed in June 2001, it constituted new evidence which justified her confession and materially affected her innocence to the crime. We disagree with this assumption.

First, we do not find that the affidavit contains "newly discovered" evidence. This evidence could have been discovered before trial with the exercise of due diligence. Despite defendant's contention that the evidence is newly discovered because the affidavit is dated after the time of trial, the mere fact that the affidavit is dated after the time of trial does not render the evidence newly discovered. People v. Harris, 206 Ill. 2d 293, 301 (2002). Clearly, defendant was with White and Bennick on the night of the crime and the possibility that White and Bennick were solely responsible for the murder of Paula Proper on the night of the crime might have been discovered sooner. More importantly, if the affidavit is true, then defendant was armed with this information at the time of trial.

-4-

No. 2--04--1009

Further, she testified that she originally confessed to the shooting so that White would not have to return to prison and that it was too late to change her confession when the police told her that someone had been killed. If it was true that she had been coerced into falsely confessing to the crime based on threats, she would not have later denied her involvement in the crime. Had the alleged threats been truly effective, she would have persisted in her confession at trial.

Second, defendant's evidence fails to present a free-standing claim of actual innocence. Instead, defendant uses White's confession to merely supplement the claim of innocence which she presented at trial.

Finally, evidence of defendant's guilt in this case was overwhelming. Defendant was convicted on the following evidence: the testimony of an eyewitness, Raven Proper, who identified defendant as the shooter; the testimony of Jason Taylor, who heard defendant tell White that she would "do it," saw White hand a gun to defendant, and later heard defendant confess to the shooting and state that she believed that somebody was looking out the window at the time; and Brandi Anderson, who described in similar detail that defendant told her that she took White's van and shot at the house. We note that the jury was instructed on first-degree murder and on the law of accountability. The evidence supports either theory. Moreover, based on the overwhelming evidence of guilt, the affidavit of White is not of such a conclusive character as it would probably change the outcome on retrial. See Washington, 171 Ill. 2d at 489. We affirm the decision of the circuit court dismissing this claim without an evidentiary hearing.

Accordingly, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

BYRNE, with GROMETER, P.J., and GILLERAN JOHNSON, J., concurring.

103764

**SUPREME COURT OF ILLINOIS**
**CLERK OF THE COURT**
SUPREME COURT BUILDING
SPRINGFIELD, ILLINOIS 62701
(217) 782-2035

January 24, 2007


Hon. Lisa Madigan
Attorney General, Criminal Appeals Div.
100 West Randolph St., 12th Floor
Chicago, IL 60601

No. 103764 - People State of Illinois, respondent, v. Dawn M.
            Johnson, petitioner.  Leave to appeal, Appellate
            Court, Second District.


     The Supreme Court today DENIED the petition for leave to

appeal in the above entitled cause.


     The mandate of this Court will issue to the Appellate Court

on March 1, 2007.

EXHIBIT F



06-10065

Page 1

TO ORDER COPIES OF ANY DOCUMENTS LISTED BELOW, CALL WESTLAW COURTEXPRESS
1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply).

For Opinion See: 127 S.Ct. 2079

**This docket is current through 05/24/2007.**
**To retrieve an updated version of this docket, click** UPDATE.

**Dockets - U.S. SUPREME COURT**

| | |
|---|---|
| Current Date: | 04/07/2008 |
| Source: | U.S. SUPREME COURT |

### CASE INFORMATION

| | |
|---|---|
| Case Title: | DAWN M. JOHNSON v. ILLINOIS |
| Court: | U.S. SUPREME COURT |
| Case Number: | 06-10065 |
| Key Nature of Suit: | APPEALS (030) |
| Date Filed: | 03/15/2007 |
| | LOWER COURT: APPELLATE COURT OF ILLINOIS, SECOND DISTRICT; LOWER COURT CASE NUMBER: 2-04-1009; LOWER COURT DECISION DATE: OCTOBER 25, 2006; DISCRETIONARY COURT DECISION DATE: JANUARY 24, 2007 |

### PARTICIPANT INFORMATION

| | |
|---|---|
| Name: | DAWN M. JOHNSON |
| Type: | PETITIONER |
| Attorney: | DAWN JOHNSON |
| | #R36751 |
| Attorney Address: | 23813 E. 3200 N. ROAD |
| | DWIGHT, IL 60420 |

| | |
|---|---|
| Name: | ILLINOIS |
| Type: | RESPONDENT |
| Attorney: | MICHAEL MARC GLICK |
| Attorney Address: | OFFICE OF THE ATTORNEY GENERAL |
| Attorney Phone: | (312) 814-2569 |
| Firm Name: | OFFICE OF THE ATTORNEY GENERAL |
| Attorney: | COUNSEL OF RECORD |
| Attorney Address: | 100 WEST RANDOLPH STREET 12TH FLOOR |

EXHIBIT G

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.

CHICAGO, IL 60601

**DOCKET PROCEEDINGS**

| Date: | Entry #: | Description: | Date Docketed: | Party: |
|-------|----------|--------------|----------------|--------|
| 04/16/2007 | | **Docket Entry:** PETITION DENIED. | | |
| | | Send Runner to the Court | | |
| 03/29/2007 | | **Docket Entry:** DISTRIBUTED | | |
| | | Send Runner to the Court | | |
| 03/21/2007 | | **Docket Entry:** WAIVER OF RIGHT OF RE-SPONDENT ILLINOIS TO RESPOND FILED. | | |
| | | Send Runner to the Court | | |
| 03/08/2007 | | **Docket Entry:** PETITION | | |
| | | Send Runner to the Court | | |

TO ORDER COPIES OF ANY DOCUMENTS LISTED ABOVE, CALL WESTLAW COURTEXPRESS 1-877-DOC-RETR (1-877-362-7387) (Additional Charges Apply).

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. US Gov. Works.



127 S.Ct. 2079                                                                                          Page 1
127 S.Ct. 2079, 167 L.Ed.2d 799, 75 USLW 3555
**(Cite as: 127 S.Ct. 2079, 127 S.Ct. 2079 (Mem))**


Johnson v. Illinois
U.S.,2007

Supreme Court of the United States
Dawn M. JOHNSON, petitioner,
v.
ILLINOIS.
**No. 06-10065.**

April 16, 2007.

Petition for writ of certiorari to the Appellate Court
of Illinois, Second District, denied.

U.S.,2007
Johnson v. Illinois
127 S.Ct. 2079, 167 L.Ed.2d 799, 75 USLW 3555

END OF DOCUMENT

EXHIBIT H

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.